IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| John C. Eustace, | ) | Civil Action No.  8:15-cv-01766-BHH-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for social security insurance benefits ("SSI").[2]  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**

Plaintiff, as a minor child, was found to be eligible for SSI benefits by Order dated September 6, 2002, due to depression and attention deficit hyperactivity disorder.  [R. 48,

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

80.[3]]  Plaintiff attained the age of 18 on September 30, 2010, and his claim was re-evaluated as a childhood age 18 redetermination pursuant to sections 211 and 212 of Public Law 104-193.  On the redetermination, it was determined that Plaintiff's condition had improved and he no longer had marked and/or severe functional limitations. [R. 51–54.]  Consequently, disability was found to have ceased on May 3, 2011, and eligibility for benefits was terminated in July 2011.  [R. 52.]  Specifically, Plaintiff was advised that, although he had previously been found disabled due to impulse control, depression, suicidal thoughts, slow processing skills, and attention deficit disorder ("ADD"), and although he had some learning problems, the evidence showed that he was able to care for his own personal needs and understand and follow simple instructions.  [R. 51.]  Additionally, the decision states that, although Plaintiff had a history of emotional problems, his condition has been treated and he was now able to think, communicate, and care for his own needs; get along with others; do his usual daily activities; and remember and follow basic instructions.  [R. 51–52.]

Plaintiff's mother requested reconsideration of the decision, which was denied by a disability hearing officer on June 14, 2012.  [R. 112–21.]  Plaintiff's mother then filed a timely request for hearing.  After a hearing on November 4, 2013 [R. 553–90], the Administrative Law Judge ("ALJ") issued a denial decision on December 12, 2013, finding Plaintiff not disabled.  [R. 19–32.]

---

[3]Due to the age of the file, the citations to the record reflect the manually stamped numbers on the pages of the hard-copy record, not the electronically indicated numbers on the electronic file.

At Step 1,[4] the ALJ found Plaintiff, born on October 1, 1992, had not attained age 22 as of September 30, 2010, but met the age 18 requirement for child's disability insurance.  [R. 23, Finding 1.]   The ALJ found that Plaintiff was eligible for SSI benefits as a child for the month preceding the month in which he attained age 18.  [R. 23, Finding 2.]  Plaintiff was notified that he was found no longer disabled as of May 2011, based on a redetermination of disability under the rules for adults who file new applications.  [*Id.*] The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 30, 2010.  [R. 23, Finding 3.]

At Step 2, the ALJ found Plaintiff had the following severe impairments: major depressive disorder and ADD.  [R. 23, Finding 4.]  At Step 3, the ALJ found that, since September 30, 2010, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 28, Finding 5.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that since September 30, 2010, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to unskilled work activity with no more than occasional direct interaction with the public. His work cannot require him to meet strict production quotas.

---

[4]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

[R. 28, Finding 6.]  At Step 4, the ALJ noted Plaintiff had no past relevant work [R. 30, Finding 7]; however, based on his age, education, RFC, and the testimony of a vocational expert, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform [R. 31, Finding 11].  On this basis, the ALJ found Plaintiff had not been under a disability, as defined in the Act, from September 30, 2010, through the date of the decision.  [R. 31, Finding 12.] The ALJ also noted that Plaintiff's disability under the SSI program ended on September 30, 2010, and that Plaintiff had not become disabled again since that time. [R. 32, Finding 13.]

Plaintiff requested Appeals Council review of the ALJ's decision but the Council declined.  [R. 9–12.]  Plaintiff filed this action for judicial review on April 23, 2015.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and that remand awarding benefits and reasonable attorney's fees is in order.  [Doc. 18.] Plaintiff argues that the ALJ's findings are contrary to the factual evidence and based on improper conclusions.  [*Id.* at 7.]  Plaintiff further argues that his conditions did not magically ameliorate when he became 18 years of age, and that the totality of the record, when considering Plaintiff's impairments and restrictions and when liberally applying the purposes of the Social Security Act, compel a finding that Plaintiff is disabled.  [*Id.*]

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that Plaintiff presents no meritorious argument in favor of disturbing this decision.  [Doc. 19 at 1.]  The Commissioner points out that, rather than

4

identify specific issues, Plaintiff merely summarizes the ALJ's decision while interspersing criticism about the decision being "rambling" or "meandering." [*Id.*]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See,*

6

*e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See*

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations

have reduced the statutory definition of disability to a series of five sequential questions.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency"

in considering disability claims).   The ALJ must consider whether (1) the claimant is

engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

impairment meets or equals an impairment included in the Administration's Official Listings

of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

the claimant from performing past relevant work; and (5) the impairment prevents the

claimant from having substantial gainful employment.  20 C.F.R. § 416.920.  Through the

9

fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* § 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ

must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]    20 C.F.R. § 416.920(a)(4)(iii), (d).

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

**D.    *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 416.960(b).

**E.    *Other Work***

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. § 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8] 20

---

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1).

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 416.969a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 416.969a(c)(1).

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31

(4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

exertional limitations).  When a claimant suffers from both exertional and nonexertional

limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case,

the Commissioner must use a vocational expert to establish the claimant's ability to

perform other work.  20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we

have found that the grids cannot be relied upon to show conclusively that claimant is not

disabled, when the case is remanded it will be incumbent upon the [Commissioner] to

prove by expert vocational testimony that despite the combination of exertional and

nonexertional impairments, the claimant retains the ability to perform specific jobs which

exist in the national economy.").  The purpose of using a vocational expert is "to assist the

ALJ in determining whether there is work available in the national economy which this

particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's

testimony to be relevant, "it must be based upon a consideration of all other evidence in

the record, . . . and it must be in response to proper hypothetical questions which fairly set

out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783

F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant

issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important

13

when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.

14

*See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a

15

determination on a claimant's disability.  20 C.F.R. § 416.917.  Under the regulations,

however, the ALJ may determine that a consultative examination or other medical tests are

necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he

furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing

the existence of a medical impairment that could reasonably be expected to produce the

pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling

pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716,

723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the

claimant has produced medical evidence of a 'medically determinable impairment which

could reasonably be expected to produce . . . the actual pain, in the amount and degree,

alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged

pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the

Fourth Circuit, it is well established that "subjective complaints of pain and physical

discomfort could give rise to a finding of total disability, even when those complaints [a]re

not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity,

17

> severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

Rather than cite to any specific allegation of error by the ALJ, the Plaintiff criticizes the ALJ's manner in evaluating Plaintiff's claim and characterizes the decision as a "tortured manifesto of wildly diverging statements and conclusions which is pervaded by the cherry picking of opinions within opinions and conclusions within conclusions which is simply not supported by substantial evidence in the record."  [Doc. 18 at 6.]

As stated above, under 42 U.S.C. § 405(g), a court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Richardson v. Califano*, 574 F.2d 802, 803 (4th Cir.1978); *Myers*, 611 F.2d at 982–83.  If the record contains substantial evidence to support the Commissioner's decision, it is the Court's duty to affirm the decision.  Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Hays*, 907 F.2d at 1456 (citing *Laws*, 368 F.2d at 642).  The Court lacks the authority to substitute its own judgment for that of the Commissioner.  *Laws*, 368 F.2d at 642.  "[T]he language of [§ 405(g) ] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision

as long as it is supported by substantial evidence." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

A review of the record shows that, as a child, Plaintiff suffered from symptoms which met Listing 112.04.  [R. 80.]  Upon redetermination of Plaintiff's award of benefits after age 18, the Administration concluded that, as of May 5, 2011, Plaintiff's limitations no longer met or equalled a listed impairment. [*Id*.]  Upon evaluating Plaintiff's claim of continued disability, the ALJ followed the five-step sequential evaluation process as required by the regulations.  [R. 22.]  The ALJ found that Plaintiff had severe impairments of depressive disorder and ADD [R. 23], but that the overall evidence did not support the alleged severity of his impairments [R. 24].

In drawing this conclusion, the ALJ considered the record evidence as follows:

> Between January and March 2010, the claimant received treatment at a local mental health center (Exhibit 30F). The diagnoses were ADHD and a major depressive disorder. The targeted symptoms were anxiety, depression, and hyperactive/inattentive.  The claimant reported several additional subjective symptoms in January; however, those complaints decreased as the claimant's medications were adjusted. In February, Abilify was added to his Zoloft and Concerta.  In March, the claimant reported benefits from the medications.  He was sleeping okay; he was happier and could be around people; his appetite was fair; and he was still in the band.  Mental status examinations were unremarkable, except for a depressed mood and restricted affect in January. The claimant's Global Assessment of Functioning (GAF) ratings for those three months were 55, 59, and 61, indicative of moderate to mild symptoms and that the treating psychiatrist thought there was some improvement in the claimant's mental status.
>
> The claimant has intermittently received his general medical care from Dr. Gordon Pennebaker and other physicians

20

associated with Sentinel Health Partners in mid-2010, August 2012, and October 2012 to March 2013 (Exhibits 23F, 29F, and 32F). These records document no significant chronic physical abnormalities. In May 2010, the claimant was seen for refills of his mental medications. Dr. Pennebaker did not explain why he was refilling the claimant's medications instead of a psychiatrist. Other than a flat and odd affect, no abnormal medical signs were documented. He noted Concerta helped with the claimant's ability to focus and Abilify had helped his depressive symptoms. In July 2010, no abnormal mental medical signs were recorded. In August 2011, the claimant returned for medication refills. He had recently moved back to the area and had not yet been able to obtain psychiatric treatment. The claimant was reportedly fairly stable on his medications. The claimant was clear, alert, and had a normal mood and affect. The claimant's Vyvanse, Paxil, and Abilify were refilled based on the bottles he brought with him to the appointment. There are no further references to mental status or issues in these records.

The claimant was treated by Dr. Arvind Patel, psychiatry, between August 2010 and May 2011 (Exhibits 28F and 33F). The claimant had recently moved to Georgia, and his father brought him to the initial evaluation. His diagnostic impression included attention deficit disorder and major depression with psychotic features. The initial mental status examination was unremarkable, except for an anxious mood and fair insight, judgment, and impulse control. Dr. Patel gave the claimant a GAF rating of 70, indicative of mild symptoms. He placed the claimant on Vyvanse, Abilify, and Zoloft; the claimant's medications and dosages were adjusted during the course of his treatment with Dr. Patel. The claimant was seen four times in follow-up. In September, the claimant's behavior was worse, but in November, his symptoms were improved. He continued to have a lot of anxiety, fear, and apprehension. The claimant reported feeling tired, fatigued, and irritated. Nevertheless, Dr. Patel said the claimant was doing fairly well. He made C's on his report card and spent most of his time on the computer. The Zoloft dosage was increased. In February 2011, the examination was unremarkable, except for an anxious mood. Dr. Patel described the claimant as somewhat lazy, and he did not apply himself. The claimant denied side effects from his medications. Dr. Patel added Paxil to the claimant's medication

21

regimen and discontinued Lexapro (The progress notes do not show a prescription for Lexapro; however, it is a serotonin inhibitor similar to Zoloft, and Zoloft is not mentioned in this progress note). When the claimant returned in May 2011, his symptoms had again worsened. The claimant's Abilify dosage was increased.

Dr. Robert C. Smith, School Psychologist, evaluated the claimant in September and October 2010 to determine Georgia eligibility for special education (Exhibit 24F). The claimant was entering the 11th grade and age 18. Dr. Smith described the claimant as very laid-back and relaxed. He approached testing in a thoughtful and reflective manner. The claimant reported his medications helped him very much. He demonstrated excellent attention to assigned tasks. On the second day of testing, the claimant displayed good cooperation and effort; he appeared to be friendly and cooperative. He denied any overt symptoms of depression. Testing revealed an average range of intellect. Academically, the claimant's grade equivalents ranged from 10.1 to greater than 18. Dr. Smith said the claimant's achievement equaled or exceeded his cognitive ability. He saw no evidence of a learning disability. The claimant had a very slow, methodical work speed. The Conners Rating Scales-3, indicated the claimant's medications appeared to have a therapeutic effect on his school functioning. Dr. Smith concluded that based on the diagnosis of ADHD, the claimant's history, and processing weakness, there appeared to be some need for continued services. The claimant's ADHD might interfere with his academic potential.

Dr. Smith is a one-time examining psychologist. As such, his opinions can only be considered as a snapshot of the claimant and cannot be extrapolated to a long-term term opinion of the claimant's mental status. Nevertheless, his opinion is consistent with his examination of the claimant and is given considerable weight for that specific time.

In January 2011, Dr. Philip L. Kaplan performed a psychological consultative examination of the claimant; the claimant was 18 years old (Exhibit 27F). He was in the 11th grade and in regular classes. His grades were passing and above average. He was pursuing a regular diploma. The mental status examination was unremarkable, except for a

depressed mood and a muted, constricted affect. The claimant appeared shy and avoidant. Testing showed a Verbal Comprehension score of 95, a Perceptual Reasoning score of 104, a Working Memory score of 83, a Processing Speed of 79, and a Full Scale IQ of 89. These scores were all low average to average, except for processing speed, which was borderline.  Academically, the claimant's scores ranged from below average to above average. He was below average in word reading and reading composite. Dr. Kaplan's diagnoses were ADHD and a depressive disorder.  He concluded the claimant's prognosis was good with his current medications in regard to employment. He thought the claimant might have difficulty managing employment relationships. The claimant could understand simple instructions and complete assigned tasks in a timely manner as long as the tasks were appropriate to his skill set.  Dr. Kaplan thought the claimant was capable of managing his own funds.

Dr. Kaplan is a one-time examining psychologist. As such, his opinions can only be considered as a snapshot of the claimant and cannot be extrapolated to a long-term term opinion of the claimant's mental status. Nevertheless, his opinion is consistent with his examination of the claimant and is given considerable weight for that specific time.

In August 2011, the claimant returned to the mental health center and continued to receive treatment through October 2013 (Exhibits 30F, 34F, 35F, an 36F). The diagnoses remained unchanged from 2010 - ADHD and a depressive disorder.  When he returned, the claimant said he needed his medications. He was having trouble paying attention. Multiple significant behavior symptoms were reported.  The mental status examination was unremarkable, except for a disheveled appearance, lethargic motor activity, flat affect, passive mood, and soft voice.  He was given a GAF rating of 55, indicative of moderate symptoms. Two months later, the mental status examination was unremarkable, and his GAF rating was 70, indicative of mild symptoms. In December 2011, the claimant was off medications, and the mental status examination documented worse medical signs; his GAF was 49, indicative of serious symptoms.

> From January 2012 through April 2013, mental status examinations were unremarkable, except for one instance of subdued mood and an instance of fair insight and fair judgment. His GAF ratings ranged from 62 to 70, indicating mild symptoms. Those scores indicate the claimant's treating psychiatrist saw improvement in the claimant since December 2011. In June 2013, the claimant's symptoms worsened somewhat, but no current mental medications were listed, and the claimant was ambivalent about them. His GAF rating declined to 58, indicative of moderate symptoms. Wellbutrin was prescribed. The following month, the claimant reported he had not gotten the prescription filled; nevertheless, the mental status examination was unremarkable, and he was given a GAF rating of 61, indicative of mild symptoms. In September 2013, the claimant reported he was not taking his medication and was feeling fine without it. The mental status examination showed the claimant was withdrawn and had impaired concentration. The claimant reported he passed his GED and wanted to start work on getting his driver's license. He was socializing two to three times a week. He was applying for some jobs; he was referred to Vocational Rehabilitation for possible job training and assistance. The October 2013 progress note showed no significant abnormalities.

[R. 24–27.]

The ALJ also considered the opinions of State Agency psychological consultants from May and December 2011, who found Plaintiff was capable of performing routine tasks, would fare well in employment that minimized regular contact with large groups of coworkers and did not require work with the public, and would fare well in a relatively isolated, low-stress environment. [R. 29.] However, newly submitted evidence after these opinions were rendered shows that Plaintiff participated in the school band without evidence of difficulty dealing with others, and that he primarily had been in a regular classroom setting. [*Id.*] Thus, the ALJ found that Plaintiff was not restricted in working with coworkers as suggested by the consultants. [*Id.*] Additionally, Plaintiff testified he was not

24

taking any medications as of the date of the hearing; he stopped a few months before the hearing and felt better physically; although he said he still had problems paying attention. [*Id.*]

Further, the ALJ considered Plaintiff's activities of daily living, which included playing in a band, cleaning, playing games, making his bed, washing dishes, helping with grocery shopping, and hanging out with his five to six close friends. [R. 29–30.] Plaintiff also reported having a girlfriend and taking her to the movies once and that he liked being on his phone, playing video games, watching television and contacting his friends via the Internet and Facebook. [R. 30.]

Upon review of the record and the ALJ's decision, the Court notes the ALJ considered and discussed his evaluation of the medical evidence of record and clearly explained his consideration of the same. The ALJ also expressly considered the testimony of record, as well as opinions provided regarding Plaintiff's mental limitations, in developing Plaintiff's RFC. These limitations were, likewise presented to a vocational expert who found Plaintiff capable of work. [R. 600.] Plaintiff has neither directed the Court to any evidence of record that was excluded from consideration, nor given any basis for his inability to perform in accordance with the RFC. Instead, Plaintiff merely expresses disagreement with the ALJ's characterization of the evidence. Such disagreement, without more, is insufficient for the Court to overturn the decision of the ALJ. *See Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) (holding that the law is clear that, if, in the face of conflicting evidence, reasonable minds could differ as to whether a claimant is disabled, it is the Commissioner or the ALJ who makes the decision); *see also Hays*, 907 F.2d at

1456 (holding that although this court might have come to a different conclusion, it is not authorized, on review, to re-weigh conflicting evidence or substitute its judgment for that of the Commissioner.)   In light of the above, the Court cannot find that the ALJ's decision is not supported by substantial evidence.   Thus, remand is not appropriate and the decision of the Commissioner should be affirmed.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 4, 2017
Greenville, South Carolina